CASE 26—ACTION BY EXECUTOR AND HEIRS OF C. B. PARSONS AGAINST
CARLTON PARSONS AND OTHERS, TO SELL REAL ESTATE IN WHICH
DEFENDANTS, PARSONS AND OTHERS FILED A CROSS ACTION
AGAINST P. G. HERMANN TO RECOVER REAL ESTATE OF HIM
WHICH CROSS PLAINTIFFS CLAIM UNDER THE WILL OF C. B. PAR-
SONS, DECEASED.—JAN. 8.

# Hermann v. Parsons, &c.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION, NO. 2.

FROM A JUDGMENT FOR CROSS PLAINTIFFS, DEFENDANT HERMANN AP-
PEALS.   REVERSED.

WILLS—INTERESTS   CREATED—CONTINGENT   REMAINDER—JUDGMENTS
AGAINST REMAINDERMEN.

Held:   1. A will giving testator's widow property for life provided
that at her death the property should be sold, and divided among
the children.   The widow was empowered to disinherit any
child unless she should marry, in which case they were all to
take as heirs.   She was to have no power to alienate or in-
cumber the real estate, and the issue of a deceased child were
to stand in the place of their parent.   HELD, that the issue of
a deceased child took merely a contingent remainder interest,
and were bound by a judgment and sale thereon, obtained dur-
ing their parent's lifetime by a municipal lien claimant in an
action to which they were not parties except as represented by
their parent and testator's widow.

E. L. McDONALD AND P. G. HERMANN, FOR APPELLANT.

POINTS AND AUTHORITIES.

1. Where a husband devised property to his wife, with re-
mainder after her death to his children surviving her, and the is-
sue of such of his children as may have previously died, such
issue during the life of their parents have merely contingent re-
mainders, and are not necessary parties to a suit brought for en-
forcement of a claim for street improvements against the prop-
erty to which their parents and the life tenant are parties.
Such contingent remaindermen are bound on the principle of

representation, their parents having the preceding vested estate in remainder, representing them. Calvert on Parties, pp. 251, 253; Mitford & Tyler's Pleadings &. Practice in Equity, p. 264; Freeman on Judgments, sec. 172; Hilliard on Mortgages, vol. 2, p. 167; Faulkner v. Davis, 18 Grattan, 651, 690; Baylor's Lessee v. De Jarnett, 13 Grattan, 166; Hawthorne v. Beckwith, 89 Va., 789; Harrison v. Walton, 95 Va., 725; Nodine v. Greenfield, 7 Paige, 544; U. S. Trust Co. v. Roche, 116 N. Y., 120; Townsend v. Frommer, 125 N. Y., 446; Kent v. Church of St. Michael, 136 N. Y., 10, 17; Kirk v. Kirk, 137 N. Y., 510; Temple v. Scott, 143 Ill., 290; Hale v. Hale, 146 Ill., 227; Gavin v. Curtin, 171 Ill., 640; McCampbell v. Mason, 151 Ill., 500; Ruggles v. Tyson, 6 Am. & Eng. Decisions, p. 685; Johnson v. Jacob, 11 Bush, 646, 659; Fritsch v. Klausing, 11 Ky. Law Rep., 790; Robinson v. Columbia Fin. & Trust Co., 19 Ky. Law Rep., 1771; Edwards v. Woolfolk's Admr., 17 B. Mon., 376; Park v. Humpich, &c., 20 Ky. Law Rep., 879; Farr v. Gilreath, 23 S. Car., 502; Mosely v. Hankenson, 22 S. Car., 323; Bofil v. Fisher, 3 Rich. Eq., (S. Car.), 1.

2. Although by reason of fraudulent circumstances connected with the sale, one acquiring title to property may be considered as a trustee for the party defrauded, and be compelled to surrender the property or account for profits, nevertheless the sale is not void, but only voidable, the legal title passing. Perry on Trusts, secs. 334, 602; Minor's Institutes, 241, 230, 2d vol., White & Tudor's Leading Cases, &c., vol. 1, p. 256, note to case of Fox v. Mackreth; Freeman on Void Judicial Sales, sec. 33; Covington & Lexington R. R. Co. v. Bowler's Heirs, 9 Bush, 468; Wilson's Heirs v. Wilson, 9 B. Mon., 274.

(a) In such case, if the parties defrauded elect to avoid the sale and recover the property, they must offer to do equity by redeeming their share by repayment of the purchase price, taxes, &c. paid by such purchaser. Minor's Inst., vol. 2, 242; White & Tudor's Leading Cases, vol. 1, p. 259; Mitchell v. Moore, 6 Bush, 659; Covington & Lexington R. R. Co. v. Bowler's Heirs, 9 Bush, 468; Crutcher v. Hord, 4 Bush, 360; Williams v. Williams, 8 Bush, 241; Fishback v. Green, 87 Ky., 107, 115; Shelley v. Gore, 5 Dana, 449; Vandever v. Vandever, 97 Ky., 344.

(b) In such case, a bona fide purchaser for value and without notice of the equities affecting the title of the fraudulent purchaser, having acquired the title, will be protected, and can not be compelled to surrender the property upon an equitable accounting or otherwise. Pomeroy's Eq. Juris., sec. 754; White & Tudor's Leading Cases, vol. 1, 257; Freeman on Void Judi-

Hermann v. Parsons, &c.

cial Sales, sec. 39; Hardin's Exors. v. Harrington, 11 Bush, 367; Wilson's Heirs v. Wilson, 9 B. Mon., 274.

(c) A sale of property having been made by a court, having jurisdiction of the parties, and the subject matter of the action, can not be attacked collaterally for mere errors or irregularities in the proceedings. Gardner's Admr. v. Strode, 5 Litt., 314; Green v. Hall, 4 Bush, 590; Sander's Heirs v. Gatewood, 8 J. J. M., 327; Shelby Co. Ct. v. C. & O. R. R., 8 Bush, 209, 210; Paul v. Smith, 82 Ky., 451.

3. A court has jurisdiction to sell the entire property for satisfaction of a street claim, even if it were the duty of the life tenant to keep down such claims.

4. The court erred in sustaining demurrers to pleadings containing merely denials of material allegations in pleadings, to which they are responsive.

5. Contingent remaindermen are barred by the statute of limitation when the title to property in which they have interest, is sold, and the life tenant and trustees in whom the title is vested are barred, and this is true whether the purchaser be held to be a constructive trustee or not. Edwards v. Woolfolk's Admr., 17 B. Mon., 376; Coleman v. Walker, 3 Met., 65; Barclay v. Goodloe's Exor., 83 Ky., 493; Wilson v. Louisville Trust Co., 102 Ky., 522 Meeks v. Olpherts, 100 U. S., 564; Rogers v. Reid, 14 Ky. Law Rep., 811; Clark v. Seay, 21 Ky. Law Rep., 394.

6. Where material issues are raised by the pleadings, it is error to give judgment for the plaintiff, without any proof whatsoever, to sustain his allegations.


STROTHER & GORDON, AND HARGIS & DUNCAN, FOR APPELLEES.

POINTS AND AUTHORITIES.

1. The first paragraph of the rejoinder is bad. The will of C. B. Parsons was of record when the suit of Hamsley v. Jacquemin was filed, and when appellant purchased and accepted a deed under the decree and sale in that case. This will was a link in the chain of title, and appellant was bound to take notice of it, and of who were parties in interest under the will, and consequently necessary parties to the suit. The rule of caveat emptor applies. Besides, this paragraph attempts to deny legal propositions arising on facts well pleaded in the rejoinder, without denying the facts plead.

2. The second paragraph of the rejoinder is bad, because it denies upon information and belief matters shown by the reply

to be matters of record, and also for the reasons stated in No. 1 above.

3. The third paragraph of the rejoinder is bad for the same reasons stated above.

4. The fourth paragraph of the rejoinder is bad for the reasons given above.

5. The executors did not hold the title to the property in question. That was devised to Emily C. Parsons for life, the remainder was in H. B. Parsons, subject to defeasance by his death before the death of the life tenant, and upon the happening of that event vested in these appellees. The legal title was not held in trust, and even if it was, the executors were not parties to the suit of Hamsley v. Jacquemin. In the case of Edwards v. Woolfolk, 17 B. M., 376, relied on by appellant, the legal title was held in trust and the trustee was a party to the suit, and the court simply held that wnat barred the trustee barred the remaindermen. That case has no application to the case at bar. All the authorities cited by appellant's counsel in support of his contention have the same facts, and therefore, do not apply to the case at bar.

(a) The rule clearly established is that adverse possession during the pendency of the life estate, during its existence, presents no bar to the right of the remainderman or reversioner. The cause of action does not accrue to them until the end of the life estate. Boone v. Dykes, 3 Mon., 538; Betty v. Moore, 1 Dana, 236; Burnie v. Richardson, 5 Dana, 425; King v. Minns, 7 Dana, 273; Davis v. Tingle, 8 B. M., 542; Turman v. White, 14 B. M., 569; See also Simrall v. Graham, 1 Dana, 575.

(b) Limitation does not begin to run against one in remainder or reversion until the right of entry exists in him. Francis v. Wood, 81 Ky., 16.

(c) Which is not until the termination of the particular estate. Mays v. Hanna, 4 R., 50.

(d) Where the life tenant conveys the fee with general warranty the grantee takes only the life estate of the grantor, and limitation does not begin to run against the remainderman in favor of the grantee until the termination of the life estate. Gudgel v. Tydings, 10 R., 737.

(e) The right of remaindermen to recover land does not accrue until the death of the life tenant, and an action, therefore, brought by them within fifteen years from that time is not barred. Davidson v. Kelly, 23 R., 1011.

(f) Appellant's authorities do not apply to the facts of the case at bar.

The fifth paragraph of the rejoinder, whether viewed

as an effort to avoid the effect of the failure to make appellees parties to the Hamsley suit, or as an effort to plead the statute of limitations, is equally defective.

6. Judgments are conclusive between parties and privies only, but never conclude persons who are not parties or privies. Feltman v. Butts, 8 Bush, 120.

(a) And none are parties who are not named as such in the record. M. & St. L. Packing Co. v. Gray, 9 Bush, 148.

(b) These appellees were not in privity with the life tenant, nor with their father, nor with any other party to the Hamsley suit. They took nothing from any of these, but directly under the will of C. B. Parsons.

7. It was the duty of the life tenant who was entitled to the income of the entire estate to keep down and pay encumbrances such as street warrants and taxes, and the remaindermen were not liable thereto. Arnold v. Smith, 3 Bush, 165; Johnson v. Smith, 5 Bush, 103; Fox v. Long, 8 Bush, 554; Dumesnil v. City of Louisville, 2 R., 429-431; Am. & Eng. Ency. of Law, vol. 25, p. 281; See also Johnson v. City of Louisville, 11 Bush, 355.

8. Appellees were *in esse* when the Hamsley suit was filed, living in the city of Louisville, and were necessary parties to that suit, and not having been made parties, the judgment and sale was void as to them and their interest did not pass.

(a) Faulkner v. Davis, 18 Gratton, 683, cited by appellant, criticized and shown not to hold that contingent remaindermen are not necessary parties.

The same is true of Gifford v. Hart, cited by appellant. Harrison v. Walton, 95 Va., 725, shows the rule in Virginia to be that contingent remaindermen *in esse* are necessary parties.

Jacob v. Johnson, 11 Bush, 646, cited by appellant is an unanswerable authority for our contention.

Fritsch v. Clausing, 11 R., 788, cited by appellant, was a suit for a sale under section 491, Civil Code, and has no application to the case at bar.

Feltman v. Butts, cited by appellant is directly in point upon our contention.

So the authorities outside of Kentucky are strong in favor of our contention. Farr v. Gilbreath, 23 S. C., 502-503; Moseley v. Hankinson, 22 S. C., 331; Leroy v. City of Charleston, 20 S. C., 71; Harrison v. Walton, 95 Va., 725; Goodess v. Williams, 2 Younge & Collyer, 594; Same case, The Jurist, vol. 7, p. 1123; Long v. Long, 62 Md., 67; Ency. of Plead. & Prac., vol. 15, p. 649; Barbour v. Whitlock, 4 T. B. Mon., 180, is a Kentucky case strongly supporting our contention.

9. To hold that appellees were not necessary parties to the suit of Hamsley v. Jacquemin is to violate section 1 of the Fourteenth Amendment to the Constitution of the United States. Scott v. McNeal, 154 U. S., 34; McArthur v. Scott, 113 U. S., 340.

OPINION OF THE COURT BY JUDGE NUNN—REVERSING.

In the year 1871, C. B. Parsons died in Jefferson county, Ky., leaving a will, which was duly probated, by which he made devises to each of his seven children; H. B. Parsons, the father of these appellees, being one of them. He also, by the eighth item of his will, made a bequest to his wife, Emily C. Parsons. We quote so much of this item as will aid in elucidating the question to be considered. After giving her the property for life, he used this language: "At the death of my wife. in her widowhood, all of my property reserved to her in this item, both real and personal, shall be sold by my executors, and the proceeds equally divided among my heirs. My wife shall have power for good and sufficient cause to disinherit from the interest embraced in this item, any of my children, but in the event of her doing so, the interest so retained shall not be devised or given to another, but shall be embraced in the general fund to be divided with the rest among my remaining heirs. Should my widow marry, it is my will that she shall have no power whatever to disinherit any one of my children so far as the property devised to her is concerned, but they shall take the property as my heirs under this will." "She shall not have power to alienate, sell or encumber any of the real estate whatever, but shall keep the same intact. Should any of my children die (and by heirs I mean children) leaving issue (lawful) of their own, such issue shall stand in the place of their dead parent, and take in equal division among them what would have been under this my last will, their parent's share in my estate."

H. B. Parsons, one of testator's children, and father of these appellees, died in the year 1879.     The widow of the testator died in the year 1898, and after her death the executors and heirs of C. B. Parsons brought an action in the chancery court to sell the real estate so devised to his widow for life for the purpose of a division of the proceeds among his heirs, as directed by the will.     The appellees, as children of H. B. Parsons, were made defendants, and they answered and made their answer a cross-petition against appellant, P. G. Hermann, alleging that a certain parcel of real estate situated in Louisville, Ky., on the corner of Thirty-third and Bank streets, describing it, belonged to C. B. Parsons, and was by him devised to his widow for life under the eighth item above referred to in this opinion, and that their father, H. B. Parsons, died in the year 1879, and before his mother died, and by reason thereof, and under the provisions of the will of C. B. Parsons, they took a fee-simple interest in this real estate, and that appellant, P. G. Hermann, was in the possession of this piece of property on the corner of Thirty-third and Bank streets, and was setting up some claim thereto; and asked that he be summoned to answer, and they be adjudged the owners of one-seventh interest therein, and that this interest be sold, and the proceeds be divided between them.     The appellant answered, and alleged that he was the sole owner of this piece of real estate.     That he derived his title in the following manner:     That on the twelfth day of September, 1874, there was instituted in the chancery court of Louisville an action by one T. Hansley against the widow of C. B. Parsons and his seven children, all of whom were served with process, in which action Hansley sought to enforce a lien held by him upon the property described in that and in this action, which lien existed for

the cost of improving Thirty-third street; the court in that
action enforced a lien, directing a sale of the property, which
was sold in satisfaction of the lien debt; Mary Parsons
became the purchaser, and a deed to the property was made
to her by the court's commissioner; and that he has obtained
a fee-simple title to this property from the vendees of Mary
Parsons. The parties filed other pleadings. which we deem
unnecessary to explain. It is sufficient to say that the only
question necessary to be determined on this appeal is
whether or not, on the facts already stated, the appellant
or appellees own this one-seventh interest in this lot on
corner of Thirty-third and Bank streets. It is agreed that
these appellees were not parties to the Hansley suit, but
that their father, H. B. Parsons, and his mother, the widow
of C. B. Parsons, were parties to that action.

It is contended by the appellees—and the lower court agreed
with them—that they had a remainder interest in this
property under the will of their grandfather, and before
they could be deprived of their interest in this property it
was necessary that they should have been made parties to
that action, and, as they were not parties thereto, they still
owned their interest. We are of the opinion that the lower
court·erred. These appellees, under this will, merely held
contingent remainder interests. Their grandmother held
the life estate, and their father the fee, subject to be de-
feated by his death before his mother's death. The general
rule is that it is sufficient to bring before the court the per-
sons whose several interests combined make up the first es-
tate of inheritance. As these appellees' grandmother and
their father were parties to that action, and they owned to-
gether the first estate under the will at that time, it was
unnecessary to have made appellees parties, as they were
only contingent remaindermen, and were bound by repre-

sentation.    See Calvert on Parties, p. 251; Freeman on
Judgments, section 172.    The reason for this rule is stated
in Faulkner v. Davis, 18 Grat., 690, 98 Am. Dec., 698, where
the court said:    "This rule of representation often applies
to living persons who are allowed to be made parties by rep-
resentation for reasons of convenience and justice, because
their interests will be sufficiently defended by others who are
personally parties, and who have motives both of self-inter-
est and affection to make such defense, and they therefore
consider it unnecessary to make such persons parties, and,
indeed, improper to do so, and thus compel them to liti-
gate about an interest which may never vest in them."    Their
father, who held the first estate subject to the life estate of
his mother, was a party.    He had a motive of self-interest
and affection to cause him to make defense.    We have not
been able to find a case in point, decided by this court, but
there are several cases which appear to recognize the correct-
ness of the rule stated.    A distinction has been pointed out,
however, in Kentucky, between cases where contingent re-
maindermen's rights are affected by a judgment obtained by
one in privity with his estate and by a stranger to the in-
strument by which such contingent remainder has been cre-
ated.    This distinction has been clearly pointed out in the
case of Johnson v. Jacob, 11 Bush, 646.    In that case the
court said:    "It has frequently been held that a stranger
to the instrument by which contingent limitations upon the
title to real property are created may by judgment regularly
obtained against the life tenant in possession, bar the con-
tingent remaindermen.    The reason for this rule is obvious.

If such was not the rule, the deed or will of a grantor or
testator might so limit the title passed as to leave the holder
of an outstanding and paramount title without remedy
because of his not being able, until after the happening of

some remote event, to ascertain the persons against whom to institute this action. . . Our attention has been particularly called to the case of Gifford v. Hart, 1 Sch. & Lef., 407; Faulkner v. Davis, 18 Grat., 684, 98 Am. Dec., 698.    In each of these cases the complainant was a stranger to the title under and through which the contingent remaindermen claimed title."    In the case of Fritsch v. Klausing (11 R., 788), 13 S. W., 242, the court said:    "All the parties having a vested interest were represented and had their day in court.    The sale was made, and A. S. Klausing became the purchaser, and, we presume, complied with the terms of the sale.

It was not necessary to make those who might be heirs of Anderson parties to the action.    Their interests, if any they had, were of so remote a character as not to be estimated or defined."    Also, see R. A. Robinson's Sons v. Columbia Finance & Trust Co., (19 R., 1771), 44 S. W., 631; 17 B. Mon., 374; Park v. Humpech (20 R., 879) ; 47 S. W., 768.

T. Hansley who enforsed this improvement lien on this lot, was a stranger to the instrument or will by which the contingent limitations upon the title to this real estate were created, and did so by reason of his judgment regularly obtained against the life tenant in possession and H. B. Parsons, who held the first estate in remainder.    Consequently, under the authorities referred to, we are constrained to hold that appellees have no interest in the lot described.

Therefore the judgment of the lower court is reversed, and cause is remanded for further proceedings consistent with this opinion.